UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| OAKWOOD COMMUNITY CENTER ICF/MR, | ) ) ) |
| Plaintiff, | ) Civil No. 09-49-GFVT ) ) |
| V. | ) ) |
| KATHLEEN SEBLIUS, Secretary of the United States Department of Health and Human Services, | ) **MEMORANDUM OPINION** ) **& ORDER** ) ) ) |
| Defendant. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Plaintiff, Oakwood Community Center ICF/MR, brought this action under 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision to terminate Oakwood's Medicaid participation made by the Secretary of the United States Department of Health and Human Services ("Secretary").[1]  The Court, having reviewed the record and for the reasons set forth below, denies Oakwood's Motion for Summary Judgment [R. 17] and grants the Defendant Secretary's Motion for Summary Judgment [R. 20].

**I.**

Oakwood is an intermediate care facility for the mentally retarded (ICF/MR) located in Somerset, Kentucky.  [R. 17.]  It receives reimbursement from the Medicaid program for its Medicaid-eligible residents.  [*Id.*]  On August 22, 2005, Kentucky's Cabinet for Health and

---

[1] Pursuant to 42 U.S.C. § 1395cc(h)(1)(A), an institution or agency dissatisfied with a decision of the Secretary to terminate its Medicaid participation is entitled to a hearing by the Secretary in accordance with § 405(b) of Title 42 and to judicial review of the Secretary's final decision after such hearing in accordance with 42 U.S.C. § 405(g).

Family Services' Office of the Inspector General ("OIG"), the state survey agency, completed a survey of Oakwood's facility. [Administrative Record ("AR") 1571, 1602.] This survey, conducted after a resident with a history of seizures drowned while bathing unsupervised [*see* AR 1602-04], determined that Oakwood was out of substantial compliance with Medicaid conditions of participation,[2] resulting in immediate jeopardy[3] to Oakwood's residents. [*Id.* at 1571.] Specifically, OIG found conditional-level deficiencies in the areas of Client Protections and Facility Staffing. [*Id.*] *See* 42 C.F.R. §§ 483.420 & 483.430.

The Secretary, through the Centers for Medicare and Medicaid Services ("CMS"), accepted the OIG survey findings, including OIG's recommendation to terminate Oakwood's provider agreement effective September 14, 2005. [AR 1571-72.] CMS's letter to Oakwood requested an allegation of compliance and stated that if Oakwood's allegation was acceptable, a revisit would occur before the termination date. [*Id.*] The letter further informed Oakwood that after any such revisit: (1) if CMS determined that the reasons for termination continued, termination would proceed; (2) if the immediate jeopardy was removed and total compliance was achieved, termination proceedings would cease; and (3) if the immediate jeopardy was removed but total compliance was not achieved, Oakwood *could* be allowed more time to correct the

---

[2]In 42 C.F.R. § 483.400, *et seq.*, the Secretary sets forth "conditions of participation" that ICFs/MR must meet. The condition of participation at 42 C.F.R. § 483.420, for example, relates to, and is titled, "Client Protections." Each condition is made up of several "standards." In order for the condition to be met, all or a majority of the standards must be met.

[3]The regulations define "immediate jeopardy" as "a situation in which immediate corrective action is necessary because the provider's noncompliance with one or more requirements of participation or conditions of participation has caused, or is likely to cause, serious injury, harm, impairment, or death to an individual receiving care in a facility." 42 C.F.R. § 442.2.

deficiencies. [*Id.* at 1572.]  The letter, then, made it clear that total compliance was the only way to ensure that termination would be halted.

Oakwood did submit an allegation of compliance acceptable to CMS, and OIG conducted a revisit survey on September 14, 2005. [AR 2451.]  OIG determined that the immediate jeopardy identified during the August 2005 survey had been removed. [*Id.*]  Beginning on September 12 and continuing through September 17, however, OIG also conducted a survey related to a different incident. [*Id.*]  On August 31, 2005, an Oakwood resident left his community work site with a non-Oakwood employee. [*Id.* at 2479.]  Later, the owner/manager of the store where the resident worked admitted to Kentucky State Police that he sexually abused the resident.  After investigating the incident, OIG found that condition-level deficiencies continued to exist at Oakwood in the categories of Client Protections and Facility Staffing. [*Id.* at 2476-93.]  *See* 42 C.F.R. §§ 483.420 & 483.430.  OIG further found condition-level deficiencies in the areas of Governing Body and Management and Active Treatment Services. [AR 2468-76, 2493-2500.]  *See* 42 C.F.R. §§ 483.410 & 483.440.  Additionally, OIG found immediate jeopardy to exist. [AR 2468.]  According to CMS, the immediate jeopardy "related to the facility's failure to provide supervision in a community setting; failure to report and investigate allegations of suspected sexual abuse; and failure to protect clients from further potential abuse." [*Id.* at 2449.]

CMS sent a termination letter to Oakwood on September 19, 2005. [AR 2417-18.]  The letter stated that, based on the revisit, the provider agreement had been terminated effective September 14, 2005. [*Id.*]  Oakwood timely requested a hearing to appeal CMS's decision. Administrative Law Judge ("ALJ") Richard J. Smith conducted a hearing on December 3, 2007, and he affirmed the termination of Oakwood's provider agreement in a written opinion on April

15, 2008. [*Id.* at 1-15.] Briefly summarized, ALJ Smith determined that Oakwood was out of substantial compliance with conditions of participation during both the August and September survey periods, and that CMS has statutory authority to terminate an ICF/MR whenever it finds that a condition-level deficiency exists. [*See id.* at 5-13.] ALJ Smith further found that CMS's determination that immediate jeopardy existed during the September survey was not clearly erroneous. [*Id.* at 14.] In the Secretary's final decision, issued in December of 2008, the Department of Health and Human Services Departmental Appeals Board Appellate Division ("DAB") affirmed ALJ Smith's decision. [*Id.* at 16-36.] This cause of action followed.

## II.

### A.

In reviewing a final decision of the Secretary, the courts "do not consider the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Myers v. Sec'y of Health and Human Svcs.*, 893 F.2d 840, 842 (6th Cir. 1990). The courts may overturn the Secretary's factual findings only if they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("The findings of the [Secretary] as to any fact, if supported by substantial evidence, shall be conclusive."). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Myers*, 893 F.2d at 842 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). As to the Secretary's interpretation of regulations, "courts may overturn the Secretary's decision only if it is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law. Further, courts are to give substantial deference to an agency's interpretation of its own regulations. In sum, if it is a reasonable regulatory interpretation we must defer to it." *Woodstock Care Center v. Thompson*,

363 F.3d 583, 588 (6th Cir. 2003) (internal citations and quotation marks omitted).  Upon review of the pleadings and administrative record, courts have the power to enter "a judgment affirming, modifying, or reversing the decision of the [Secretary] . . ., with or without remanding the case for a rehearing."  42 U.S.C. § 405(g).

**B.**

**1.**

Oakwood raises three main arguments on appeal to this Court.  First, Oakwood argues that the Secretary's action failed to satisfy the requirements to terminate an ICF/MR certification set forth in 42 C.F.R. § 442.117.  This section provides,

> (a) A survey agency must terminate a facility's certification if it determines that–
>
>   (1) The facility no longer meets conditions of participation for ICFs/MR as specified in subpart I of part 483 of this chapter.
>
>   (2) The facility's deficiencies pose immediate jeopardy to residents' health and safety.

42 C.F.R. § 442.117(a)(1)-(2).  Oakwood contends that the DAB applied the wrong legal standard when it concluded that this section does not require *both* a finding that the facility no longer meets the conditions of participation *and* a finding of immediate jeopardy in order to terminate.  Essentially, then, Oakwood argues that the Secretary incorrectly found that an ICF/MR's Medicaid participation could be terminated on the basis of condition-level deficiencies alone.

The DAB specifically addressed Section 442.117(a) in its decision.  According to the DAB,

> "The plain language specifies that a <u>state survey agency</u> is <u>mandated</u> to terminate

5

> an ICF/MR when it determines that condition-level deficiencies exist and pose immediate jeopardy. This regulation does not limit the state survey agency to terminating <u>only</u> when immediate jeopardy is present, nor does it on its face preclude the state survey agency from terminating an ICF/MR when it has a condition-level deficiency.

[AR 24 (emphasis in original).] The DAB continues, "Moreover this regulation says nothing about CMS's authority to terminate based on survey findings." [*Id.*] The Court agrees with the DAB. Section 442.117(a) applies to state survey agencies, not to CMS, and although it requires state survey agencies to terminate an ICF/MR when both condition-level deficiencies and immediate jeopardy are present, it does not forbid the survey agencies (or CMS) from terminating on the basis of condition-level deficiencies alone.

Further, other statutes and regulations support the DAB's position that the Secretary has authority to terminate an ICF/MR's Medicaid participation when one or more conditions of participation are not met, even without the presence of immediate jeopardy. Specifically, 42 C.F.R. § 442.101(e) provides that "[t]he failure to meet one or more of the applicable conditions of participation is cause for termination or non-renewal of the ICF/MR provider agreement." The DAB points to this regulation in its decision. [*See* AR 25.] Oakwood argues that § 442.101 is not applicable because it relates to an ICF/MR obtaining certification or renewal prior to the execution of a provider agreement. By its clear terms, however, § 442.101(e) governs the termination or non-renewal of an ICF/MR provider agreement.

Additionally, 42 C.F.R. § 442.101(d) provides that an ICF/MR can be certified with *standard-level deficiencies* only if all conditions of participation have been met and the facility submits an acceptable plan of correction covering the deficiencies. 42 C.F.R. § 442.101(d)(3)(i)-(ii). Similarly, 42 C.F.R. § 442.105 provides the conditions under which an ICF/MR may be

6

certified for Medicaid participation if a survey agency has found it deficient in meeting the *standards* for ICFs/MR. These regulations suggest that while ICFs/MR may, under certain circumstances, be certified with standard-level deficiencies, they generally may not be certified where they fail to meet one or more conditions of participation, thus lending support to the DAB's position that ICFs/MR may be terminated for condition-level deficiencies.

Under Section 1910(b)(1) of the Social Security Act (42 U.S.C. § 1396i(b)(1)), the Secretary may cancel approval or terminate an ICF/MR at any time if she finds that the facility fails to meet the requirements contained in section 1905(d) (42 U.S.C. § 1396d(d)), or if she finds grounds for termination of the agreement with the facility pursuant to section 1866(b) (42 U.S.C. § 1395cc(b)). Section 1905(d)(1) states that "[t]he term 'intermediate care facility for the mentally retarded' means an institution . . . for the mentally retarded . . . if the primary purpose of such institution . . . is to provide health or rehabilitative services for mentally retarded individuals *and the institution meets such standards as may be prescribed by the Secretary*." (emphasis added). The standards prescribed by the Secretary, of course, include the conditions of participation at 42 C.F.R. § 483.400, *et seq.* Indeed, 42 C.F.R. § 483.400 states that the subpart implements section 1905(d) of the Social Security Act. Additionally, section 1866(b)(2)(A) of the Act provides that the Secretary may terminate a provider agreement after the Secretary "has determined that the provider fails to comply substantially with the provisions of the agreement [or] with the provisions of this title and regulations thereunder . . . ." Thus, section 1910 of the Social Security Act provides the Secretary with authority to terminate an ICF/MR when the conditions of participation are not met. Further, section 1910 says nothing about any need for immediate jeopardy to be present before termination is allowed.

Thus, the DAB's finding that the Secretary has authority to terminate an ICF/MR on the basis of condition-level deficiencies alone is supported by substantial evidence, and its interpretation of the applicable regulations is neither arbitrary, capricious, nor an abuse of discretion. Here, CMS's letter after the August 2005 survey specifically informed Oakwood that the only way to ensure that termination would be halted was total compliance. [*See* AR 1572.] Oakwood has not challenged the August 2005 survey condition-level deficiency findings, nor has it argued that it removed all condition-level deficiencies by the date of termination.[4] Accordingly, the Secretary had authority to terminate Oakwood for failure to meet the applicable conditions of participation.

---

[4]As in its earlier arguments to the ALJ and the DAB, Oakwood suggests that the September revisit survey, relating to earlier survey findings concerning a resident with a history of seizures who drowned while bathing unsupervised, and the concurrent survey or complaint investigation, relating to the August 31, 2005 incident in which a resident was permitted to leave his community job site with a non-Oakwood employee unsupervised, were separate and distinct. In its Motion for Summary Judgment, Oakwood implicitly argues that the Secretary does not have the authority to terminate on the basis of new survey findings, or those unrelated to the revisit survey, without giving Oakwood time to correct those deficiencies. The Court, however, agrees with the DAB's response to this argument:
> The concurrent complaint investigation found condition-level deficiencies still present in the same areas cited on the August survey based on problems exposed by the August 31, 2005 incident. Oakwood seeks to treat those findings as somehow inadmissible in evaluating whether Oakwood achieved compliance or still had condition-level deficiencies as of September 14, 2005[,] because they were not made in the revisit survey itself. CMS's letter, however, does not state that only those findings made during a discrete revisit survey (as opposed to any type of survey) may be considered in assessing compliance. Oakwood cites no authority suggesting that the results of investigating new complaints must be ignored in determining whether to proceed with a pending termination action.

[AR 28.] The Secretary could properly consider the results of the September revisit survey and the concurrent survey relating to supervision of residents in the community in deciding whether to cease or go forward with termination.

**2.**

Oakwood's second argument is that the decision to terminate its provider agreement was not supported by substantial evidence. This argument relates to the August and September survey findings of immediate jeopardy, and it has two parts. First, Oakwood contends that the immediate jeopardy found on August 22, 2005, was removed by the September revisit survey, and Oakwood should have been allowed more time to correct deficiencies in accordance with the State Operations Manual ("SOM"). This argument is without merit.

Sections 3010 and 3012 of the SOM by their terms apply to termination of Medicare provider agreements. According to § 3040 of the SOM, however, the procedures used to terminate an ICF/MR's Medicaid eligibility are similar to those outlined in sections 3010 and 3012. Under § 3010B, "[w]hen an immediate jeopardy to patient health or safety is documented," the state survey agency and regional office "complete termination procedures within 23 calendar days." The SOM stresses that 23 days is the maximum time allowed. SOM, § 3010B. Under § 3012, where a facility is not in compliance with one or more conditions of participation, but immediate jeopardy is not present, the SOM provides for a ninety-day termination schedule. The regional office, however, "may terminate more quickly as long as the regulatory requirements for notification of the public and provider are satisfied." SOM, § 3012. Section 3040A1 of the SOM, which expressly applies to terminations of ICFs/MR, addresses what happens when a facility that has been documented as having an immediate jeopardy removes that threat, but condition-level deficiencies continue to exist.[5] According to the SOM, in that situation, the

---

[5]Significantly, in light of earlier discussion, SOM § 3040 states that "[s]ection 1910(b)(1) of the [Social Security] Act authorizes CMS to terminate approval of a Medicaid ICF/MR's eligibility to participate in the Medicaid program when CMS determines that the provider does

procedures for no immediate threat are used, and the ICF/MR is given ninety days from the date of the survey to correct the deficiencies. SOM, § 3040A1.

The September revisit survey did find that the immediate jeopardy identified on August 22, 2005, relating to the resident with a history of seizures who drowned while bathing unsupervised, had been removed or abated. Thus, relying on § 3040A1 of the SOM, Oakwood argues that it was entitled to be switched to a ninety-day correction track to correct condition-level deficiencies found during the August survey.

As noted by the DAB, however, the SOM does not address Oakwood's precise situation. Although the immediate jeopardy found in August was determined to have been removed by the September survey, at the same time a new finding of immediate jeopardy was made related to Oakwood's failure to supervise a resident in the community, failure to report allegations of abuse, and failure to protect residents from future abuse. Oakwood contends that, in light of this new finding, CMS should have set Oakwood's termination date 23 days after the end of the September survey and should have allowed Oakwood to attempt to remove the new deficiencies. But, as stated by the DAB, "[n]othing in [the SOM's] language supports the theory that a new finding of immediate jeopardy during a concurrent complaint survey somehow restarts the 'clock' if the immediate jeopardy determination at the initial survey was abated."[6] [AR 31.]

Immediate jeopardy at Oakwood was continuous from the August through the September

---

not substantially meet the" conditions of participation.

[6]Moreover, the SOM "is not a regulation, and it does not have the force and effect of law." *In the Case of: Ruth Taylor Institute v. Health Care Financing Administration*, DAB CR403, 1996 WL 493107, n. 4 (1996). *See also Beverly Health & Rehabilitation Services, Inc. v. Thompson*, 223 F. Supp. 2d 73, 103 n. 31 (D.D.C. 2002).

surveys. As noted by the Secretary, under Oakwood's theory, CMS never has the authority to terminate so long as a facility corrects the specific conduct cited in a survey. Clearly, however, this would not be in the best interests of a facility's residents. Where immediate jeopardy is present at two consecutive surveys, nothing in the law or regulations requires CMS to provide additional time for correction, even if the immediate jeopardy found at the second survey relates to a different incident than the immediate jeopardy found at the first. Substantial evidence supports the Secretary's decision to terminate Oakwood.

Next, Oakwood challenges the September survey's finding of immediate jeopardy. Specifically, Oakwood argues that the Secretary's decision to terminate its Medicaid participation was not supported by substantial evidence because Oakwood's failure to provide sufficient resident supervision in the community and failure to protect residents from future abuse was abated prior to the September survey's finding of immediate jeopardy, and the September survey's finding that Oakwood failed to investigate or report alleged abuse is not supported by the record.

Pursuant to 42 C.F.R. § 483.420(d)(2), under the condition of participation related to Client Protections, a Medicaid facility such as Oakwood "must ensure that all allegations of mistreatment, neglect or abuse . . . are reported immediately to the administrator or to other officials in accordance with State law through established procedures." Kentucky law provides that any person, including a physician, nurse, alternate care facility employee, or caretaker, who has reasonable cause to suspect that an adult has suffered abuse must make a report to authorities immediately. KRS 209.030(2)-(3). [*See also* AR 3105.] An "adult" in this context means "a person eighteen (18) years of age or older who, because of mental or physical dysfunctioning, is

11

unable to manage his or her own resources, carry out the activit[ies] of daily living, or protect himself or herself from neglect, exploitation, or a hazardous or abusive situation without assistance from others . . . ." KRS 209.020(4). [*See also* AR 3105.] And "abuse" includes "sexual abuse." KRS 209.020(8). [*See also* AR 3105.]

Oakwood argues that it did not have reasonable cause to suspect that the resident who had been permitted to leave his community job site with a non-Oakwood employee, and without his Oakwood job coach, had been abused. It is undisputed, however, that after the resident returned to Oakwood, he nodded his head when Nurse Juanita Whitis asked if someone had touched him. [AR 3067.] While it has been stated that the resident nodded his head in response to any question, and while a later medical examination suggested that no anal penetration had occurred, these facts did not absolve Oakwood from the responsibility of reporting the resident's allegation of abuse. This is especially true, where, as here, an Oakwood professional, Jackie Stewart, had reported to other staff that the resident had displayed increased maladaptive behaviors since beginning his job and had expressed a dislike of going to his place of employment. [*See id.* at 3020.] Further, a medical examination purporting to rule out the possibility of anal penetration cannot be considered a complete and thorough investigation of the allegation of abuse. As correctly stated by the DAB,

> Oakwood argues that no reporting or investigation obligation arose because the facility did not suspect abuse once physicians examined [the resident] at the facility and found no basis to believe that anal penetration occurred. The duty to report is triggered at the point that an allegation or reasonable suspicion of possible abuse comes to the attention of facility staff. The nurse who first examined him on his return to the facility referred him to a physician to check for abuse. That undisputed fact suffices to demonstrate that facility staff reasonable suspected abuse, which is enough to trigger the reporting and investigation obligations. Examination by the physician might well be a reasonable step in an investigation,

> but not a basis to decide not to report or investigate. The facility's responsibility to report suspected abuse cannot be avoided by undertaking itself to rule out the suspicion instead of permitting proper authorities to decide whether or how to proceed.

[*Id.* at 35-6.] Thus, the Secretary's finding that Oakwood failed to investigate or report alleged abuse is supported by substantial evidence in the record, and this finding alone is likely sufficient to support the finding of immediate jeopardy.

Oakwood contends that its failure to prevent future abuse and its failure to provide sufficient resident supervision in the community were abated prior to the September survey's finding of immediate jeopardy. Oakwood argues that when the resident was allowed to return to his community job site on September 12, 2005, it had no cause to suspect abuse. [R. 17 at 15.] In light of the discussion above, however, this argument fails. Oakwood did have cause to suspect abuse sufficient to trigger reporting requirements. Still, it allowed the resident to return to his job before reporting the suspected abuse and before any thorough investigation had taken place. Oakwood further notes that the resident was allowed to return to his job only after his job coach had been trained on his level of supervision. [*Id. See* AR 2565.] After reviewing the record, however, the Court finds no error in the Secretary's decision, after a complete investigation, that Oakwood's deficiencies relating to supervision remained. As noted by ALJ Smith, "[f]ailure to supervise clients was a systemic and regrettably-pervasive problem at" Oakwood. [AR 14.] Thus, as determined by the ALJ and the DAB, the September survey's finding of immediate jeopardy is supported by substantial evidence. Accordingly, although the Secretary had authority to terminate Oakwood for condition-level deficiencies alone, in this case, she did not have to. Immediate jeopardy existed at all relevant times.

**3.**

Finally, Oakwood argues that the Secretary's action violated § 1910(b)(1) of the Social Security Act and 42 C.F.R. Part 442 by terminating its provider agreement without a finding of immediate jeopardy to resident health and safety. As stated previously, however, the law and regulations permit the Secretary to terminate on the basis of condition-level deficiencies, without the presence of immediate jeopardy. Moreover, immediate jeopardy at Oakwood was continuous from the August through the September surveys. Thus, for the reasons discussed above, Oakwood's argument is without merit.

**III.**

In sum, the Secretary had the authority to terminate Oakwood's Medicaid participation on the basis of its condition-level deficiencies alone. Still, the record reveals that immediate jeopardy existed at Oakwood at all relevant times, providing an alternative basis for termination.

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

(1) The Plaintiff's Motion for Summary Judgment [R. 17] is **DENIED**;

(2) The Defendant's Motion for Summary Judgment [R. 20] is **GRANTED**; and,

(3) **JUDGMENT** in favor of the Defendant will be entered contemporaneously herewith.

This the 26th day of March, 2010.



Signed By:
*Gregory F. Van Tatenhove*
**United States District Judge**